UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EARL ARTHUR STANTON, JR.,

    Plaintiff,

v.                                                        Case No. 8:17-cv-2492-T-AAS

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.
_____/

## ORDER

Earl Stanton seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, pleadings, and joint memorandum the parties submitted, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Mr. Stanton applied for DIB on June 14, 2014, alleging an amended disability onset date of September 20, 2014. (Tr. 62, 167–70). Disability examiners denied Mr. Stanton's application. (Tr. 94–101). Mr. Stanton then requested and received a hearing before the ALJ, who found Mr. Stanton not disabled. (Tr. 11–20, 57–93, 162–63).

The Appeals Council denied Mr. Stanton's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7). Mr. Stanton now seeks review of the Commissioner's decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Mr. Stanton was forty-eight years old on the alleged disability onset date. (Tr. 19, 164). Mr. Stanton has past relevant work experience as a material handler, garbage collector, and a sales agent. (Tr. 18).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, then he has no severe impairment and is not disabled. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent him from

---

[1] If the ALJ determines that the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. § 404.1572.

performing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity ("RFC").[3] Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing other work that exists in the national economy, then he is not disabled. § 404.1520(g).

The ALJ here determined Mr. Stanton had not engaged in substantial gainful activity since September 20, 2014, the amended alleged disability onset date. (Tr. 13) The ALJ found Mr. Stanton had these severe impairments: obesity, type II diabetes mellitus with diabetic neuropathy, deep venous thrombosis in the right leg, and right shoulder degenerative changes. (*Id.*). But the ALJ found Mr. Stanton's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 14).

The ALJ then found Mr. Stanton had the RFC to perform light work,[4] except:

> [Mr. Stanton] can stand and/or walk for four hours in an eight-hour workday. He can occasionally operate foot controls bilaterally, and he can occasionally operate a motor vehicle. [Mr. Stanton] is limited to occasional bending, stooping, kneeling, crouching, crawling, or climbing

---

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. § 404.1545.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

3

>     ramps or stairs, and he cannot climb ladders, ropes, or scaffolds.
>     Finally, he cannot tolerate exposure to unprotected heights and uneven
>     terrain.

(Tr. 15). Based on these findings, the ALJ determined Mr. Stanton could not perform his past relevant work. (Tr. 18). However, the ALJ determined Mr. Stanton could perform other jobs that exist in significant numbers in the national economy. (Tr. 19). Specifically, Mr. Stanton could perform the jobs of an assembler, folder, inspector, and hand packager. (*Id.*). Thus, the ALJ concluded Mr. Stanton was not disabled. (Tr. 20).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). There must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's

4

decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

**B.     Issues on Appeal**

Mr. Stanton raises these issues on appeal: (1) whether the ALJ properly considered Mr. Stanton's leg and right shoulder limitations when reaching his RFC determination[5] (Doc. 16, pp. 11–13, 21–25); and (2) whether the ALJ properly considered and weighed the opinion of treating physician, Dr. Halasz (*Id.* at pp. 25–29).

1. **Residual Functional Capacity Determination**

Mr. Stanton contends the ALJ's RFC determination does not adequately account for his leg and right shoulder impairments. (*Id.* at pp. 11–13, 21–25). In response, the Commissioner argues the ALJ properly evaluated Mr. Stanton's subjective statements of leg and shoulder limitations and found they contradicted the medical evidence and other evidence in the record. (*Id.* at pp. 13–21, 24–25).

A claimant may establish his disability through his own testimony of pain or other subjective symptoms. *See Foote*, 67 F.3d at 1560–61. The ALJ must consider a

---

[5] Mr. Stanton raises this issue as two separate issues, but the court will address issues one and two together.

claimant's testimony of pain and other subjective symptoms when the claimant meets the three-part "pain standard." *Id.* at 1560. Under that standard, evidence of an underlying medical condition must exist. *Id.* If that threshold is met, there must be objective medical evidence that confirms the severity of the alleged pain or symptoms arising from that medical condition, or evidence that the objectively determined medical condition is of such a severity it can reasonably be expected to cause the alleged pain or symptoms. *Id.*

If the record shows the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors. § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors about the claimant's functional limitations and restrictions because of his pain or symptoms. § 404.1529(c)(3). The ALJ then will examine the claimant's statements about his symptoms in relation to all other evidence and consider whether there are any inconsistencies between those statements and the record. § 404.1529(c)(4).

Here, the ALJ properly applied the pain standard. The ALJ found Mr. Stanton had underlying medical conditions, including obesity, type II diabetes mellitus with diabetic neuropathy, deep venous thrombosis in the right leg, and right shoulder degenerative changes. (Tr. 13). Despite these conditions and their resulting limitations, the ALJ determined Mr. Stanton retained the RFC to perform light work with additional limitations. (Tr. 15–18). In assessing Mr. Stanton's RFC, the ALJ considered Mr. Stanton's allegations about the need to elevate his legs while sitting and right shoulder restrictions. (Tr. 16–17). However, the ALJ found Mr. Stanton's subjective statements on the limiting effects of these limitations contradicted the medical record and other evidence in the record. (Tr. 16).

When addressing Mr. Stanton's alleged inability to sit without elevating his legs, the ALJ thoroughly considered the objective medical evidence. (Tr. 15–18). As the ALJ noted, Mr. Stanton's physical exams were largely unremarkable, and he denied weakness, numbness, tingling, or muscle aches in his lower extremities. (Tr. 16, 447, 489, 520, 553, 559, 591). Mr. Stanton's examinations consistently evidenced normal coordination, normal sensation, normal tone, and full range of motion throughout his extremities. (Tr. 489, 553, 517, 520). Mr. Stanton's systems were negative for musculoskeletal and neurological abnormalities. (Tr. 447, 508). Mr. Stanton often had a normal gait and stance, and normal muscle bulk, tone, and strength. (Tr. 517, 559). This evidence provides substantial evidence supporting the ALJ's evaluation of Mr. Stanton's statements on his inability to sit without elevating his legs.

7

Mr. Stanton also asserts the ALJ erred because he found Mr. Stanton had a severe impairment of deep venous thrombosis but erroneously failed to include an RFC limitation addressing Mr. Stanton's need to elevate his legs. (Doc. 17, p. 13). To the contrary, after finding a severe impairment or combination of impairments, the evaluation goes on to step three for a determination of whether a claimant's impairments meet or equal an impairment in the Listings. "[T]he only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Mr. Stanton's severe impairment of deep venous thrombosis does not automatically require at step four an RFC determination that includes a limitation in sitting with elevation of the legs. The ALJ accounted for Mr. Stanton's lower extremity symptoms in limiting him to a reduced range of light work with additional limitations in standing/walking, limited operation of foot controls, and no climbing ladders, ropes, or scaffolds. (Tr. 15).

Similarly, the ALJ properly considered Mr. Stanton's right shoulder limitations and found he could perform a reduced range of light work. (Tr. 15–18). As the ALJ noted, while Mr. Stanton had reduced right shoulder range of motion in August 2015, physical therapy improved his condition. (Tr. 580). In September 2015, Mr. Stanton stated he swam in the ocean without pain and he was no longer taking pain medication. (Tr. 554). In November 2015, Mr. Stanton had full strength and range of motion in his right upper extremity with normal muscle bulk and tone. (Tr.

543). In March 2016, Mr. Stanton claimed he enjoyed gardening in his retirement. (Tr. 604). This evidence provides substantial evidence supporting the ALJ's evaluation of Mr. Stanton's right shoulder limitations.

The ALJ properly considered the evidence (favorable and unfavorable to Mr. Stanton's disability claim) and substantial evidence supports the ALJ's credibility determination and RFC assessment. Thus, remand is not required on this issue.

### 2. Treating Physician's Opinion

Mr. Stanton contends the ALJ erred in failing to give substantial weight to treating physician Dr. Halasz's opinion.[6] (Doc. 16, pp. 25–29). In response, the Commissioner argues the ALJ properly considered Dr. Steven Halasz's medical opinion evidence and accorded it little weight. (*Id.* at pp. 29–34).

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). In determining the weight to afford a medical opinion, the ALJ considers many factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. § 404.1527(c). For instance, the more evidence a medical source presents to support an opinion, the more

---

[6] Mr. Stanton appears to argue the ALJ did not consider Dr. Halasz as a treating source. To the contrary, the ALJ clearly stated, "[a]s for the opinion evidence, [Mr. Stanton's] physician, Dr. Steven Halasz …" and "[a]lthough the doctor had a treating relationship with [Mr. Stanton] …" (Tr. 18).

9

weight the ALJ should afford that medical opinion. § 404.1527(c)(3). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted).

Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240–41. The ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam). Here, the ALJ properly applied the factors for evaluating medical opinion evidence and had good cause, supported by substantial evidence, for concluding Dr. Halasz's opinion was entitled to little weight. (Tr. 18).

Dr. Halasz completed a medical source statement, in which he opined Mr. Stanton was subject to many limitations, including limitations in standing and walking, reaching, and the need to elevate his legs. (Tr. 566–59). Mr. Stanton argues the ALJ erred in assigning little weight to Dr. Halasz's opinion without also relying on a contrary opinion. To the contrary, requiring an ALJ to adopt a medical source's opinion on limitations "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *See* SSR 96-5p, at *2. While the ALJ uses a physician's opinion to address certain issues, some issues are reserved for the Commissioner. 20 C.F.R. § 404.1527(c). Although a physician's opinion on RFC and disabling symptoms is relevant evidence and will be considered,

it is not dispositive. *See Bell v. Bowen*, 796 F.2d 1350, 1354 (11th Cir. 1986); *see also Robinson v. Astrue*, 365 F. App'x at 999 (holding that "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors"). To the extent Dr. Halasz opines Mr. Stanton cannot work or has disabling limitations, such opinions are reserved for the Commissioner.

The other medical evidence, including Dr. Halasz's own records, also support the ALJ's evaluation of Dr. Halasz's opinion. For example, before Dr. Halasz's examination, he noted Mr. Stanton had a normal gait and station, normal reflexes, normal coordination, and normal motor strength. (Tr. 489). Other examinations revealed Mr. Stanton had no weakness, numbness, or tingling and had no difficulty with gait or balance. (Tr. 447, 489, 520, 553, 559). Mr. Stanton had no weakness, no swelling in his extremities, no muscle aches, and no arthralgia or joint pain. (Tr. 591). He had normal coordination, normal sensation, normal muscle bulk, and tone, and full range of motion throughout his extremities. (Tr. 517, 520, 543). Mr. Stanton was also able to swim and garden. (Tr. 554, 604).

The ALJ properly considered and gave little weight to the severe limitations imposed by Dr. Halasz and substantial evidence supports the ALJ's RFC determination. Thus, remand is not required on this issue.

## IV. CONCLUSION

The Commissioner's decision is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court must enter final judgment for the Commissioner consistent with 42 U.S.C. Sections 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida, on March 15, 2019.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge